CHASEZ, Judge.
Miss Louise A. Mirabile filed a suit for damages on September 17, 1964 against *428 Mrs. J. W. Mason, in which she alleged that on March 19, 1964 she was struck on the hack of the head, the neck and the back and shoulders by a piece of plaster which fell from the ceiling located in the bedroom of the premises leased to her and owned by the said Mrs. Mason, and that the injuries were the result of negligence on the part of Mrs. Mason in failing to repair the defective ceiling after complaints by the petitioner.
The defendant denied the plaintiff’s claim, asserted contributory negligence, and reconvened for four months rent alleged to be due from the plaintiff.
The trial judge awarded $80.00 in medical expenses and $1250.00 for the injury sustained, subject to a credit of $180.00, representing three months unpaid rent. The defendant requested a new trial which was denied, and she now prosecutes this appeal.
The defendant seeks reversal or a remand by this Court on the grounds that, as a matter of law, the lowér court could not have granted an award to the plaintiff upon the evidence adduced in her behalf. The defendant contends that the testimony of the plaintiff was such as to destroy her credibility as a witness and by brief points to the following as attempted suppression of evidence.
1. That she neglected to reveal a prior incident in the summer of 1963, (in which she hit her head in closing an automobile door) in her deposition.
2. That she claimed to have been examined by a Doctor Fred K. Vaughn, relative to the accident, but which was denied by him in an affidavit offered in connection with the motion for a new trial.
3. That she denied recollection of stating complaints of pain and numbness in her head to Dr. Sam C. Cohen which was controverted by a similar affidavit.
4. That she denied being treated by a Dr. Frank A. Oser, Jr. for an accident in 1962, also controverted by affidavit.
5. That it was established that the size of the area from which the plaster fell was smaller than what plaintiff had claimed it to be with the use of a photograph, which was shown to have been taken after additional plaster had been removed.
6. Her testimony that she lost about a week at work was not substantiated.
Counsel for the defendant also contend that the medical evidence was insufficient to support the plaintiff’s claim and was in large part based upon subjective complaints ; that no one was produced who saw any bruises or scratches which the plaintiff claimed to have sustained; that Dr. Vaughn, who was supposed to have been the first to examine her after the accident, was not produced in Court; that the “bruises and scratches” were never mentioned to Dr. Espenan and that no claim of injury was made to Mrs. J. W. Mason’s daughter, son and son-in-law when they visited the plaintiff in response to her notification to Mrs. Mason of the falling plaster.
This entire record is one of factual findings. The Court in its reasons for judgment stated:
“This is a rather unusual case, a case which appeared to the Court to be very, very simple, but it has been enlarged out of all proportions. This is a simple plaster-falling case which in the opinion of the Court should have been compromised a long time ago.
“The defendant would have the Court believe, or has attempted to defend this matter, first, by saying that no claim for injuries was made until after the tenant was put out of the house and that therefore the Court must look with suspicion upon the claim for injuries at this time.
“Well, perhaps if that was the first time that she made any claim or any move be *429 cause of injuries the Court might look with suspicion. But the evidence here is uncontradicted that on the very day that the plaster fell she notified the defendant immediately; that the defendant’s daughter, son and son-in-law went down to the house, and, as a matter of fact, plaster did fall. There is no question about that. The question about the amount of course is in the record and speaks for itself, but certainly there is absolutely not a shred of doubt that plaster fell. Now of course the defendant says, oh, plaster fell and it was only a little bit and it didn’t fall on her; there was no accident; and the reason we say that is because the defendant’s son and daughter and son-in-law say that this plaintiff said nobody was hurt; plaintiff herself said that she was thankful that she was able to keep her elderly grandmother from being hit by the falling plaster.
“But be that as it may, the evidence is uncontradicted that she went to see Dr. Espenan and he made his first examination on March 31st, long, long, long before the landlord ever went to put her out, and Dr. Espenan testified she was having trouble with her occipital headaches and with trapezius muscles, which were tense, and that he noticed some muscle spasm; I don’t remember the exact words; I think it was indirect muscle spasm, but nevertheless he was convinced she had some backache in her trapezius muscles and he recommended hot packs and ultra sound therapy, and she went to Dr. Espenan on April 2nd, the 3rd, the 4th, the 7th, the 9th and 13th of April, long, long before any claim, or move was made to put her out of the house. So the theory that she brought this suit as revenge or because she was put out of course does not stand up very well.
“Now the Court does believe that the complaints which the plaintiff makes at this time are not all the result of this accident.
“The Court believes that she had some injury to her trapezius muscle and possibly to the back of her neck but th^t these were minimal, and the Court believes that for all the pain and suffering which she sustained as a result of this accident, which has been proven by a preponderance of the evidence, she should recover the sum of $1250.00.
“The Court also believes that she should recover the amount claimed up to $80.00 for medical, making a total of $1330.00.
“There will therefore be judgment in favor of the plaintiff and against the defendant in the sum of $1330.00, and on the reconventional demand there will be judgment in favor of the plaintiff in re-convention and against the defendant in reconvention in the full sum of $180.00, which said sum will be of course counted off against the original judgment of $1330.00.
“And in order to keep the record straight, the Court, in assessing the $1250.00 for pain and suffering, has taken into consideration the financial condition of the defendant by making the award a small award.”
We first address ourselves to the question of the sufficiency of the medical evidence in support of Miss Mirabile’s case. Dr. Pierre Espenan testified that he first saw Miss Mirabile on March 31, 1964 and examined her several times thereafter. He stated that the plaintiff gave him the history of the plaster falling upon her when she attempted to shield her elderly grandmother, who was lying in a nearby bed, by throwing herself over the bed. The patient had said that she experienced no immediate pain or discomfort for the first 24 hours.
We will not go into detail with all of the various symptoms and findings of the doctor, but will attempt, to summarize his findings correlative to the trial court’s conclusions. Based upon the history and his examination, Dr. Espenan found no evidence of bruises, but did find “slight evi *430 dence of the right trapezius muscle being tense” and found
“slight indication the patient is experiencing cervical and dorsal muscular— para-vertebral muscle spasm — as a residual from the injury. This I felt was only a mild degree. The reason for the continued, protracted headaches was undetermined at this time and I had not felt it was the result of a post-traumatic experience.
******
“I would, then, say that the patient suffered a contusion to the occipital portion of the head without concussion; she suffered a contusion to the cervical spine and the dorsal spine and the upper back without evidence of residual trauma and suffered slight dorsal and cervical strain and I did not feel she would have permanent or partial disability as a result of this occurrence.”
All of the foregoing was compatible with a blow to that general area.
Dr. Frederick A. Eigenbrod, admitted as an expert in the general field of medicine, saw the plaintiff one time, on October 9, 1964. In addition to the history of the incident of falling plaster, Miss Mira-bile related an incident of the summer of 1963 in which a car door closed on her head, bruising one ear and cutting the other éar. Dr. Eigenbrod diagnosed that the patient was suffering from painful muscles in the shoulders and adjacent to the cervical vertabrae on both sides, together with headache, which was corroborative of the earlier findings of Doctor Espenan.
Dr. Irvin Cahen examined the plaintiff on May 29, 1964 and twice thereafter. Most of his testimony concerned diagnosis and treatment of the lower back area, and discomfort resulting therefrom. On the occasion of the second visit in July of 1964 the patient complained of “discomfort going up the spine to the back of the neck and to the head with numbness over the scalp and skull” which Dr. Cahen attributed to “a tension effect of apprehension”.
We think that the medical testimony outlined as above is sufficient support of the lower court’s findings of fact that the plaintiff suffered injury as stated in his reasons and the trial court could properly reach the conclusion which it did, although the medical findings were based in large part upon subjective complaints. The fact that the court chose not to accept all of the plaintiffs claims of physical injury as being a result of the accident does not mean that it can accept none of them, or create a presumption that the accident did not happen. Further, we do not think the fact that the plaintiff omitted to mention the bruises and minor scratches, (which were no longer apparent) to Doctor Espenan when treated by him should preclude her recovering for the injuries sustained. Nor is the omission of mention by plaintiff in her deposition of a 1963 incident in which plaintiff hit her head in closing an automobile door such as to destroy her credibility since she freely gave the doctor’s name (Dr. Eigenbrod) who had knowledge of this in her answers to interrogatories, and testified at the trial that it did not come to mind as being minor in nature.
Counsel also makes much ado about the court’s language in discussing the medical evidence as previously quoted, which was not couched in technically accurate terms. We are satisfied that the court fully understood the gist of the medical testimony and rendered judgment accordingly. With these remarks, we will leave the medical evidence without attempting to treat every alleged discrepancy mentioned by the defendant, except to say that the medical evidence is reconcilable to, and supportive of, the court’s decision.
The defendant vigorously argues that the failure to produce Doctor Vaughn, whom the plaintiff claimed to have seen *431 two or three days after the accident poses the “fatal dilemma” that she either falsified her testimony that she saw him, or she failed to call him as a witness because he would have been an unfavorable witness.
We note that the unrebutted testimony of the plaintiff was that Dr. Vaughn was a gynecologist and we do not think that the plaintiff necessarily contradicted herself in stating that the doctor did not prescribe medicine to her in view of the fact that all he prescribed was aspirin and hot baths. Miss Mirabile’s evidence was that Doctor Vaughn looked at x-rays he had told her to procure, and gave her a cursory physical check and, under the circumstances, we do not think the failure to produce him undermines her case to any extent. It was a matter for the trial judge to decide and certainly he was aware of the legal presumption attached to the non-production of a witness.
The plaintiff denied seeing a Doctor Cohen relative to the accident of 1963 in which defendant suggests that plaintiff had symptoms similar to some complained of in this case, which defendant contends impeaches her credibility in view of an affidavit by Dr. Cohen filed into the record. Also filed into the record was an affidavit by a Doctor Oser who stated that he saw Miss Mirabile in 1961 and 1962, two or three years prior to the accident sued on, relative to backache and that he talked to her on the telephone after the latter accident and told her to procure x-rays. Plaintiff testified at the trial that she did not know who Doctor Oser was.
The defendant’s attorney asked for a continuance near the end of the trial of this matter, for the purpose of taking the depositions of Dr. Vaughn and Dr. Cohen, which was properly denied, as these witnesses were accessible to the defendant for the trial. An application for a new trial was requested after judgment in this matter and the above-mentioned affidavits of Drs. Oser and Sam Cohen, together with that of Dr. Vaughn, were filed in connection therewith.
We point out that, insofar as the original trial was concerned, the affidavits have no probative value. We must decide, though, whether the court erred in its refusal to grant a new trial. The affidavit of Doctor Vaughn stated that he never saw Miss Mirabile professionally in connection with the injury sued upon. Dr. Cohen’s affidavit stated that he had treated Miss Mirabile for many years as her physician and since 1955 for ear abcesses, adenoids and related complaints. He also stated that he treated her July 16, 1963 relative to the 1963 car-door accident, for which she was seen at the Eye, Ear, Nose and Throat Hospital, and at that time complained that her head was “numb and tingling”; and that he treated her in January of 1966 for a swollen face, which he was unable to account for. Doctor Oser’s affidavit recited that he received a telephone call from Miss Mirabile shortly after and concerning the accident of March 19, 1964, and that he had her obtain x-rays, which were negative; that he did not see or examine Miss Mir-abile. He states he did see her in 1961 and April 2, 1962 for backache and other complaints, and in June of 1965 when she made no complaints of head or back injury. This latter examination was approximately nine months after this suit was filed.
None of the above would seem to destroy the existence of the injury accepted as proven by the trial judge; and, further, as respects the credibility of Miss Mirabile, the proof of the facts alleged by the affidavits could have been properly placed in the record by counsel for defendant producing the doctors as witnesses during the course of the trial.
We believe the record indicates that if the affidavits were to be taken at face value, they are not relevant to the issue here and suggest that Miss Mirabile may have been simply confused as respects the identities of Drs. Vaughn and Oser, since memorandum of counsel indicates that *432 these gentlemen had professional offices together at the time this incident occurred. The trial court was well within its discretion in refusing to order a new trial.
Defendant points out as an added inconsistency the fact that Miss Mirabile suffered no actual loss of earnings and that the work records of her employer showed only 56 hours lost due to “illness”. On the trial plaintiff withdrew any claim due for loss of wages. The 56 hours she was unable to work (for which she was paid) does correspond to the estimate given by her on the trial of “about a week”.
As to the actual occurrence of the accident, the plaintiff testified that she could not produce the only witness to the accident, her elderly grandmother, because the latter was unable to get around and was senile. This was corroborated by the defendant’s witnesses. The plaintiff stated that she called Mrs. J. W. Mason on the date of the accident to inform her of the accident and Mrs. Mason sent her son, her daughter and her son-in-law to see plaintiff that night. Miss Mirabile stated that she and these three visitors went into the room where the incident occurred to examine the damage in the room and the two men went upstairs to check for any other damage. At this time the plaintiff’s mother, who resided at the same address, was also present. A doctor’s note was placed into the record to the effect that the mother had recently undergone radical surgery and would not be able to testify.
All of the witnesses for the defendant (and the defendant herself) testified that plaintiff indicated that she was not struck by the plaster. The plaintiff however adamantly denied this testimony. In addition, the size of the area on the ceiling from which the plaster fell, both before and after the defendant’s relatives removed some loose plaster during their visit, was disputed. These and other fact questions were for the District Judge to determine. Plaster actually did fall, the plaintiff took it upon herself to see a doctor for her injuries, and it was for the court to weigh the varying and attending factors, and the testimony with regard thereto.
As above stated, this entire record is one of factual findings and we are not persuaded that the decision of the court a quo is manifestly erroneous and therefore the judgment rendered is affirmed.
All costs shall be borne by appellant.
Affirmed.